UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT E.,

                                        Plaintiff,

v.                                                                                    3:24-cv-00700 (TWD)

COMMISSIONER OF SOCIAL
SECURITY,

                                        Defendant.
_____

APPEARANCES:                                                      OF COUNSEL:

LACHMAN & GORTON                                   PETER A. GORTON, ESQ.
  *Attorney for Plaintiff*
1500 E. Main St
P.O. Box 89
Endicott, NY 13761

SOCIAL SECURITY ADMINISTRATION         CANDACE B. CASEY, ESQ.
OFFICE OF GENERAL COUNSEL
  *Attorney for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER

      Robert E. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his request for Disability Insurance Benefits ("DIB"). Dkt. No. 1. This case has proceeded in accordance with General Order 18 of this Court. Pursuant to 28 U.S.C. § 636(c), the parties consented to the disposition of this case by a Magistrate Judge. Dkt. No. 5. Both parties filed briefs, which the Court treats as motions under Rule 12(c) of the Federal Rules

of Civil Procedure.  Dkt. Nos. 7, 11, 12.  For the reasons set forth below, Plaintiff's motion is denied, Defendant's motion is granted, and the Commissioner's decision is affirmed.

I.      BACKGROUND

Plaintiff was born in 1984 and has a high school education with some college.  T. 234, 279.[1]  He is a 17-year military veteran.  T. 381.  Plaintiff alleges disability due to left ankle injury, right ankle injury, femoroacetabular impingement ("FAI") syndrome left hip, FAI syndrome right hip, post-traumatic stress disorder ("PTSD") with dissociation, obsessive compulsive disorder, chronic alcohol use disorder, anxiety, insomnia, and chronic sinusitis.  T. 278.  On February 7, 2021, Plaintiff applied for DIB under Title II of the Social Security Act.  T. 234-37.  This application was denied, T. 90, 112, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  T. 169.  He subsequently appeared and testified at a hearing before ALJ Bruce Fein on February 15, 2022.  T. 46-76.  On February 25, 2022, ALJ Fein issued a written decision finding Plaintiff was not disabled under the Social Security Act.  T. 25.  On April 25, 2022, the Appeals Council denied Plaintiff's request for review.  T. 1-6.  He then sought judicial review in this District, which resulted in the ALJ's decision being reversed and remanded to the Commissioner.  T. 1042-49.  After a second hearing where psychiatrist Luis Canepa, M.D., a medical expert who reviewed the records at the request of the ALJ, and vocational expert ("VE") Chandra Davies testified, ALJ Fein again issued an unfavorable decision finding Plaintiff was not disabled.  T. 1016-41, 989-1007.  Plaintiff timely appealed by the filing of the operative complaint.  Dkt. No. 1.

---

[1] The Administrative Record/Transcript is found at Dkt. No. 6.  Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.  Citations to the parties' submission will use page numbers assigned by CM/ECF, the Court's electronic filing system.

## II.  LEGAL STANDARDS

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have h[is] disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent

analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.   **Standard for Benefits**

The Commissioner has established a five-step process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).  The five-step process asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Barry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F. 3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

**III.   THE ALJ'S DECISION**

In his most recent decision, the ALJ made the following findings of fact and conclusions of law.  At step one of the sequential evaluation, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 18, 2019, the alleged onset date.  T. 991.  At step two, the ALJ found Plaintiff had the following severe impairments: PTSD, bilateral FAI

syndrome, irritable bowel syndrome ("IBS"), and insomnia. T. 992. At the third step, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 993.

At step four, the ALJ found Plaintiff had the RFC to perform less than the full range of light work, specifically finding he can:

> never climb ropes, ladders, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to unprotected heights, hazardous machinery, extreme temperatures, and pulmonary irritants such as fumes, odors, gases, dust and poorly ventilated areas. The claimant should have ready access to rest room facilities. He can have occasional interaction with coworkers, supervisors, and the public. The claimant should work in low stress job defined as only occasional decision making, changes in work setting and judgment required on the job.

T. 996. The ALJ next determined that Plaintiff is unable to perform any past relevant work. T. 1005. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. T. 1005. Thus, the ALJ found Plaintiff has not been under disability from November 18, 2019, through the date of his decision.

**IV.    ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not based upon substantial evidence:

> (1) The ALJ failed to properly assess the extent to which Plaintiff would be off-task and/or absent due to his PTSD and/or insomnia, Dkt. No. 7 at 9-15;
> (2) The ALJ failed to properly assess the frequency and duration of bathroom breaks due to Plaintiff's IBS and whether that frequency would exceed the employer tolerance limit for time off-task, *id.* at 15-20;
> (3) The ALJ improperly assessed the medical opinions, *id*. at 20-22; and

5

(4) The ALJ improperly concluded that Defendant sustained his step five burden, *id.* at 22-23.

Defendant counters that substantial evidence supports the ALJ's RFC finding. Dkt. No. 11 at 5-7. Specifically, the Commissioner argues the ALJ properly evaluated the medical opinions such that the ALJ's determinations regarding Plaintiff's time off task, need for bathroom breaks, and step five analysis were appropriate. *Id.* at 7-25.

## V.    DISCUSSION

### A.    Legal Standards

#### 1.    RFC

RFC is "'what an individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . . A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal punctuation and other citation omitted)); *see also Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make

conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion describing how the evidence supports the ALJ's conclusions, and citing specific medical facts and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the updated regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the current regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and

7

(b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the current regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

    **B.**    **Analysis**

        **1.**    **The ALJ properly accounted for Plaintiff's IBS in the RFC**

Plaintiff argues the ALJ's conclusion as to the amount of time Plaintiff would be off task on account of his need to use the bathroom, as incorporated into the RFC determination, is not

supported by substantial evidence. Dkt. No. 7 at 15-20. As noted above, the ALJ found Plaintiff's IBS was a severe impairment. T. 992. In determining the limitations stemming from Plaintiff's IBS, the ALJ considered Plaintiff's testimony that he does not "leave the house without thinking of where the next toilet is going to be" due to his symptoms. T. 63, 997. The ALJ, however, found that Plaintiff's subjective statements concerning his symptoms were not entirely consistent with the evidence of record. T. 997-98. Plaintiff argues he required the use of a bathroom at what he believed to be a debilitating frequency – three or four times a day. Dkt. No. 7 at 16; *see also*, *e.g.*, T. 899, 925, 929. These statements were properly called into question by the ALJ based on the medical evidence of record, as well as Plaintiff's own testimony. The ALJ pointed out that the majority of Plaintiff's physical examinations from 2019 to 2021 showed soft, non-tender, and non-distended abdomen with normal bowel sounds. T. 999 (citing T. 370, 373, 387, 392, 397, 401, 407, 424, 448, 451, 454, 462, 465, 468, 471, 474, 479, 484, 797, 815, 829, 926, 931, 938). Notably, the ALJ considered Plaintiff's report as to his sustained activities of daily living, although limited to some extent by his need for proximity to a bathroom, which did not reflect such drastic limitations. T. 998, 1252-58.

In support of his position that remand is required, Plaintiff cites *Lowe v. Colvin*, No. 6:15-CV-06077(MAT), 2016 WL 624922 (W.D.N.Y. Feb. 17, 2016). However, *Lowe* is distinguishable from the present case. In *Lowe*, the Court found error because "the ALJ did not base his conclusions regarding Plaintiff's requirements for bathroom access . . . and the extent to which this erodes the occupational basis for light work . . . on any medical opinion or vocational expert testimony. Instead, they are the result of the ALJ relying on his own lay opinion to provide critical evidence to support his RFC assessment." *Id*. at *7. In *Lowe* it was clear from the record why the ALJ should have incorporated additional bathroom breaks as a limitation in

the RFC. *Id*. at *6. For example, the ALJ failed to provide good reasons for rejecting multiple medical examiners' opinions restricting plaintiff's physical limitations due to IBS. *Id*. at *5. Further, plaintiff Lowe's records indicated she reported she "ha[d] been going every 20 minutes . . ." and consistently had "diarrhea, loose watery stools, about 5 to 6 times per day." *Id*. at *6. However, none of the medical examiners in this matter opined that Plaintiff was unable to control his bowels or assessed any work-related limitations related to his bowels.

Here, Plaintiff's contention that he required unscheduled bathroom breaks in the RFC is based solely on his own testimony and is not supported by other evidence in the record. Specifically, Plaintiff noted "at the max he will have two to three of these stools" with cramping prior to that "50% of the days." Dkt. No. 7 at 16 (citing T. 1360). He did not identify the duration of his bathroom breaks or the duration he wanted the ALJ to add as a limitation. The ALJ is entitled to rely on what the record says as well as what it does not say. *See Dumas v. Schweiker*, 712 F. 2d 1545, 1553 (2d Cir. 1983). Thus, the ALJ adequately addressed Plaintiff's IBS in the RFC determination, and did not err by not including frequent bathroom breaks in the RFC.

As an administrative finding, ALJ Fein bore the final responsibility for determining Plaintiff's RFC and he was well within his discretion to formulate an RFC that was based upon the record as a whole, even if the RFC did not reflect any one opinion in its entirety. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (noting that an ALJ's RFC does not need to "perfectly correspond with any of the opinions contained in the record"). It is apparent that ALJ Fein considered Plaintiff's capacity for work pace and attendance and reasonably rejected portions of the medical opinions. *See Cichocki v. Astrue*, 729 F. 3d 172, 178 n.3 (2d

Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to [his] decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision."). Accordingly, the Court concludes the ALJ's RFC formulation regarding Plaintiff's need for bathroom breaks was supported by substantial evidence and thus remand is not warranted on this basis.

### 2. The ALJ properly evaluated the medical opinions

Work pace and attendance both "fall[] under the category of concentration and persistence." *Tyler M. v. Saul*, No. 3:19-CV-426 (CFH), 2020 WL 5258344, at *11 (N.D.N.Y. Sep. 3, 2020) (quoting *Lowry v. Comm'r of Soc. Sec.*, No. 15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017)), *report and recommendation adopted*, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017). "[M]aintaining concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Cox v. Astrue*, 993 F. Supp. 2d 169, 182 (N.D.N.Y. 2012) (citation and quotation marks omitted). The Second Circuit has determined that moderate limitations in concentration, persistence, or pace are consistent with the ability to perform unskilled work. *See Matta*, 508 F. App'x. at 55 (affirming ALJ's determination that "[p]laintiff had moderate difficulties in concentration, persistence, and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (citation and quotation marks omitted); *Andrea N. v. Saul*, No. 3:18-CV-1186 (CFH), 2020 WL 1140512, at *6 (N.D.N.Y. Mar. 9, 2020) ("Accordingly, because the record evidence establishes that plaintiff has, at most, a moderate limitation in maintaining a regular work schedule and work-pace and the RFC specifically limits plaintiff to light work that

11

involves only simple, routine tasks with minimal contact with coworkers, supervisors, or the public, the RFC adequately accounts for [the plaintiff's] limitations for performing activities within a schedule and maintaining regular attendance.") (citations and quotation marks omitted).

      The ALJ limited Plaintiff to less than a full range of light work in a low stress job defined as only occasional decision making, changes in work setting, and judgment required on the job. T. 996.  The ALJ found Plaintiff had mild limitations concentrating, persisting or maintaining pace.  T. 995.  To support this conclusion, he analyzed opinions from (1) consultative examiner Amanda Slowik, Psy. D., who opined Plaintiff was not limited in his ability to sustain concentration and perform a task at a consistent pace, T. 750; and (2) state agency consultants Kimberly Lieber-Diaz, Psy. D., and Sefali Bhutwala, Ph. D., who both opined mild limitations in concentrating, persisting or maintaining pace, T. 83, 103, 1062.  The ALJ also reviewed medical reports throughout the longitudinal record showing benign mental status examinations, and which noted Plaintiff to be alert and oriented, with an appropriate affect.  T. 503-04, 519, 543, 553-55, 559, 561-64, 583, 586-87, 620, 622, 659, 669-70, 675-76, 678, 680, 699, 704, 735-36, 809, 895, 921, 1340, 1343, 1429.

      Plaintiff argues he would "be off-task and absent beyond employer tolerances" due to his PTSD and insomnia.  Dkt. No. 7 at 9.  Only two opinions addressed Plaintiff's functioning as it relates to his PTSD and insomnia.  In April 2022, Mary Anne Modrak, M.D., Plaintiff's primary care provider, completed a medical opinion questionnaire, indicating in relevant part that Plaintiff would be off task 16-20% of a normal workday and absent three or more days per month.  T. 1402-03.  Dr. Modrak explained she is "an internist, not a psychiatrist[,]" that her answers "may depend on whether [Plaintiff] is on medications/counselling or not," and that her opinions were based on Plaintiff's "diagnoses made by behavioral health providers at the VA" of

12

PTSD, nightmares, insomnia, sleep disorders, and restless legs. *Id*. She further noted Plaintiff "ha[d] not been seen by mental health services in over a year," and mental health records indicated that while on medications, Plaintiff "was goal directed, punctual, and was able to concentrate." T. 1403.

At the January 2024 hearing, Dr. Canepa, a psychiatrist who reviewed the medical records at the request of ALJ Fein, testified in relevant part that there was limited psychiatric evidence in the record, T. 1022, and he opined Plaintiff did not have functional limitations as to understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; or adapting or managing oneself. T. 1026. Upon questioning from Plaintiff's hearing attorney, Dr. Canepa testified the evidence was not "enough to conclude that [Plaintiff] would be absent three times per month," as Dr. Modrak opined. T. 1029. Dr. Canepa also testified that a limitation of two absences per month "could" be consistent with evidence of Plaintiff's insomnia, and that "[i]t's possible, yes." T. 1031. Dr. Canepa further testified that "cognitive ability can be" affected by lack of sleep, such that a person may "perhaps" be 50% to 60% effective. T. 1033.

The ALJ found Dr. Canepa's testimony was "somewhat persuasive to the extent that it is supported by and consistent with objective medical evidence in the record[,]" because "Dr. Canepa has program as well as professional expertise, and had an opportunity to review the record[.]" T. 1001. Specifically, the ALJ found the portion of Dr. Canepa's opinion "that the claimant has severe mental impairments, which cause moderate social limitations but do not meet or equal a listing or necessitate three or more absences per month[,]" was supported by and consistent with the record. T. 1001 (citing T. 747-51, 1001). The ALJ further noted "Dr. Canepa's testimony regarding [the lack of evidence to support] three or more absences per month

13

was a definitive statement based upon the evidence of record. His testimony regarding two absences was equivocal at best[,]" and "not clearly supported by the record." T. 1001.

"To analyze supportability, the ALJ must conduct 'an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion.'" *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022) (quoting *Vellone v. Saul*, No. 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)). In discounting Dr. Modrak's proposed greater limitations set forth in her April 2022 questionnaire, ALJ Fein stated "Dr. Modrak is the claimant's primary care provider and does not treat his mental impairments" and the opinion is "unsupported by the objective medical evidence of record as detailed in Dr. Canepa's testimony . . . as above described." T. 1004.

As for the consistency factor, the ALJ also found Dr. Modrak's limitations "inconsistent with the opinions of D[r]. Long and Dr. Slowik as well as the prior administrative medical findings . . . ." T. 1004. "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Rua-Campusano v. Kijakazi*, No. 20-CV-7087, 2021 WL 7287628, at *10 (S.D.N.Y. Dec. 10, 2021), *report and recommendation adopted*, 2022 WL 493390 (S.D.N.Y. Feb. 17, 2022).

The record clearly demonstrates the ALJ considered the supportability and consistency of Dr. Modrak's opinion with the record as a whole as he previously summarized the treatment providers' records and activities of daily living in the decision. *See* T. 998-1005; *see Julie M. v. Comm'r of Soc. Sec.*, No. 8:23-CV-518 (MJK), 2024 WL 664413, at *11 (N.D.N.Y. Feb. 16, 2024) ("The ALJ's detailed summary of plaintiff's treatment history, provided in an earlier section of the written decision, highlights the evidence upon which the ALJ rendered his consistency assessment.") (citation omitted); *see also Kami B. v. Saul*, No. 5:18-CV-1497 (DJS),

2020 WL 247279, at *6-7 (N.D.N.Y. Jan. 16, 2020) (finding the ALJ adequately discussed supportability and consistency because, although the plaintiff "is correct that the ALJ did not, in his discussion of Dr. Allam's opinion, explain in detail why he found those opinions not to be consistent with or supported by the evidence in the record[,] . . . the ALJ explained the findings in the record earlier in his decision").

Thus, the Court finds the ALJ adequately explained the consistency factor as set forth above. *See Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) (summary order) (ALJ did not err "by failing to explicitly repeat his prior examination of the record" when the ALJ adequately explained the medical opinions were supported by plaintiff's mental status examinations summarized in the decision and were consistent with plaintiff's treatment notes, hearing testimony, and evidence of his daily living activities that were set forth earlier in the ALJ's decision); *see also Earl H. L. v. O'Malley*, No. 5:23-CV-00643 (AMN/ML), 2024 WL 4442724, at *10 (N.D.N.Y. July 26, 2024) ("The ALJ's assessment of the persuasiveness of the medical opinions is, at face value, valid, and 'it is not the function of the reviewing court to reweigh evidence.'" (quoting *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (other citation omitted))), *report and recommendation adopted*, 2024 WL 4297113 (N.D.N.Y. Sept. 26, 2024). The regulations require that "it . . . be discernable that the ALJ properly applied the regulations and considered [the supportability and consistency] factors in weighing the medical opinions of record." *Laura Z. v. Comm'r of Soc. Sec.*, No. 21-CV-918, 2023 WL 2534421, at *4 (W.D.N.Y. Mar. 16, 2023). The record here shows the ALJ satisfied that obligation.

For example, the ALJ explained "Dr. Canepa's testimony regarding three or more absences per month was a definitive statement based upon the evidence of record. His testimony

regarding two absences was equivocal at best," and "not clearly supported by the record." T. 1001. The ALJ also explained "Dr. Canepa's testimony regarding off-task behavior is speculative at best" and that "Dr. Canepa testified that being tired could affect cognitive ability, even as much as 40% or 50%, but he did not indicate that either amount applied to the [claimant]." *Id*. *See Spottswood v. Kijakazi*, No. 23-54, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order) (upholding the finding that an opinion that the claimant "may" experience pain and "might" need to rest was unpersuasive, as it was speculative and vague). The ALJ further noted Plaintiff "informed his pulmonologist that his sleep has improved when he started taking gabapentin." *Id*. (citing T. 1409).

The ALJ also pointed to Plaintiff's testimony that he did not consistently receive psychiatric treatment throughout the relevant period. T. 887; *see* T. 66, 1022. The ALJ considered psychiatric evidence from Plaintiff's hospitalization for alcohol dependence in July to August 2020, T. 992 (citing T. 497-510), including mental status findings that Plaintiff was alert and oriented, and denied suicidal or homicidal thoughts and auditory or visual hallucinations upon discharge. T. 1000 (citing T. 503-04); *see also*, *e.g.*, T. 383, 457 (psychiatric consultations during December 2019 and January 2020 hospitalizations with findings such as calm and cooperative attitude, linear and coherent thought process, unremarkable thought content, normal concentration, and intact short-term and long-term memory). In October 2020, Plaintiff reported "that when he experiences insomnia it's hit or miss, at times he sleep[s] well and others he'll get a few hours of sleep before being woken up by nightmares/vivid dreams about being active duty." T. 999 (citing T. 564). Similarly, in November 2020, Plaintiff complained of stress and reported that on "the Thursday/Friday prior to the appointment he was having issues with insomnia where he was getting zero hours of sleep [and] state[d], he experiences this a couple

times [a] year." T. 559. Plaintiff reported better sleep in December 2020, due to "ordering new pillows and restarting Remeron 15 mg at bedtime." T. 999 (citing T. 553).

In February 2021, Plaintiff again reported difficulty falling asleep and daytime fatigue, but, as the ALJ noted, Plaintiff also reported that he used melatonin and mirtazapine (Remeron) and felt that the mirtazapine had been helping. T. 999 (citing T. 518). Lastly, as noted above, the ALJ considered Plaintiff's "benign" mental status findings between October and December 2020, such as casual and appropriate appearance; good eye contact; cooperative attitude; calm motor activity; appropriate and full-ranged affect; normal or euthymic mood; spontaneous and normal speech; organized, logical, and goal-directed thought processes; no hallucinations, delusions, or suicidal or homicidal ideations; good or intact orientation, concentration, and memory; intact cognitive function and abstraction; and adequate or intact insight and judgment. T. 1000 (citing t. 543, 553-55, 559, 561-64). Additionally, the ALJ highlighted Plaintiff's scores on diagnostic questionnaires indicated only mild depressive and/or anxiety symptoms, and moderate PTSD symptoms. T. 1000 (citing T. 668, 680, 739, 743).

It is clearly within the ALJ's discretion to find that those limitations were more appropriately on the mild rather than marked range of functional ability. *See, e.g., Maite v. Kijakazi*, No. 3:20-CV-899 (DJS), 2021 WL 6333101 at *4 (N.D.N.Y. Dec. 2, 2021) (finding it permissible for the ALJ to reconcile two medical opinions between the state agency medical consultant and the consultative examiner where one found moderate to marked limitations and the other found only moderate limitations). It is well settled in the Second Circuit that it is the ALJ's role to weigh medical opinion evidence and to resolve conflicts in that evidence. *Carl D. v. Comm'r of Soc. Sec.*, No. 5:17-cv-01114 (TWD), 2019 WL 11157704, at *11 (N.D.N.Y. Mar. 11, 2019) (citing *Cage v. Comm'r of Soc. Sec.*, 692 F. 3d 118, 122 (2d Cir. 2012) ("In our

review, we defer to the Commissioner's resolution of conflicting evidence.")).  Moreover, "[i]f the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F. 3d at 149.

In sum, Plaintiff's argument that the ALJ failed to appropriately consider the regulatory factors when discounting Dr. Modrak's opinion is without merit.  Here the ALJ plainly found Dr. Modrak's opinion lacked support and was inconsistent with other substantial evidence.  Based on the above, the Court finds the ALJ adequately explained his reasons for discounting Dr. Modrak's opinion and not including additional limitations for Plaintiff's PTSD and insomnia.  As such, substantial evidence in the record supports the ALJ's RFC determination.

Considering the foregoing, the Court finds the ALJ did not err in his RFC assessment, which is supported by substantial evidence, and the ALJ applied the correct legal standards.  Accordingly, remand is not required on this basis.

### 3.     The ALJ's step five determination was appropriate

Lastly, Plaintiff argues the ALJ erred by not including all of Plaintiff's impairments in the hypothetical posed to the VE.  Dkt. No. 7 at 22-23.  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and [the hypothetical] accurately reflects the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 150 (citation and quotation marks omitted); *see also Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (summary order) (upholding an ALJ's hypothetical where "the ALJ's hypothetical mirrored [plaintiff's] RFC, which . . . was supported by substantial evidence in the record[ ]").  Here, the ALJ presented the VE with a hypothetical that reflected the ultimate RFC determination.  *See* T. 1037-38.  As stated above, the ALJ properly considered the

evidence of record, and the RFC determination is supported by substantial evidence. Accordingly, the ALJ appropriately relied on the VE's testimony at step five of the sequential evaluation, and there is no error.

## VI. CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court finds the ALJ's decision is supported by substantial evidence and proper legal standards were applied.

**WHEREFORE,** it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED**.

Dated: September 25, 2025
      Syracuse, New York

*[Signature]*
Thérèse Wiley Dancks
United States Magistrate Judge